Case No. 18-5176, et al. Kaspersky Lab, Inc., et al. Appellants v. United States Department of Homeland Security, et al. Mr. Christensen for the appellants, Mr. Yellen for the appellees. Good morning, Your Honors. May it please reserve two minutes for rebuttal? May it please the Court, Scott Christensen, for appellants Kaspersky Lab, Inc. and Kaspersky Labs, Ltd. The question before this Court really amounts to whether Congress can legislate a specific, complete, and permanent ban on a company that prevents judicial review of the executive branch's own sweeping ban. Section 1634A of the National Defense Authorization Act banishes Kaspersky Lab from providing any goods or services to the federal government without end and without recourse. That is punishment. That statutory section was introduced one year ago today. Wait a minute. You say just by its nature it's punishment? Without context? Yes, Your Honor. What if it's done preventively? What if no one's ever done anything to be punished for? I beg your pardon? If it's done preventively and there's no act that's being punished, why is it punishment? Oh, it can be punishment, as the Supreme Court has recognized, even for prospective acts. So even if it's anticipating some difficulty in the future, it can be considered punishment following Brown, following Selective Service at the Supreme Court. So there's no preventive measure that can be taken? No, Your Honor. Congress can certainly pass laws of general applicability that can prevent problems in the future. What would a narrower law look like here? I beg your pardon? What would a narrower law look like here? I think you want a broader law. Yeah, I think the problem is the narrow law. What would a broader law look like? A broader law that we've argued would be a less burdensome law would be one in which Congress said that anyone who sought to be a federal contractor could not do business in Russia or could not have servers in Russia. Anyone could not what? Anyone who wanted to provide cybersecurity services as a federal contractor could not maintain servers in Russia. Congress's concern about this company was broader than just that its servers were in Russia. It was that its headquarters were in Russia and that it had a relationship with Russian intelligence. Is there any other company like that? There are almost every other large cybersecurity company. Not any other Russian company like that? There is no other Russian company that I know of. Would you be satisfied with a ban that said no Russian company may be a contractor? I think not, Your Honor. Again, that would not be balanced with the non-punitive purposes for the law. If there's only one party and the parties can't be named and so a larger class is substituted but there's no one else in the class, that certainly doesn't do much for you, does it? We have this fiction in state legislation all the time, right, in which cities with more than 2 million population are prevented from doing this or that and there's only one such city. So are you relying on that formality? No, Your Honor. Looking to this Court's decision in Fortitch, the Court said that the selectivity or scope of a statute may indicate punitiveness where the differential treatment of the affected party or parties cannot be explained without resort to inferences of punitive purposes. And preventive purposes are not possible as an explanation? Preventative purposes can be equally punitive to retributive purposes, according to the Supreme Court's decision in Brown. Can you read a passage from that? Yes. It was, in fact, in the Supreme Court's rejection in Brown of its prior decision in Dowd's. This is page 381 U.S. at 458. The Supreme Court in Brown said it would be archaic to limit the definition of punishment to retribution. Punishment serves several purposes, retributive, rehabilitative, deterrent, and preventative. One of the reasons society imprisons those convicted of crimes is to keep them from inflicting future harm, but that does not make imprisonment any less the punishment. No one goes to prison without having done something, correct? Nobody goes to prison without having committed a crime. Nobody goes to prison without having gone through a judicial trial that's safeguarded by all of the constitutional protections. The point is that when something is, in that context that you just read, the preventive purpose is, which we often think of as disabling, the person from committing another crime, while they're at least for the duration of their jail time. It's not that they're just put in jail as a preventive matter. Right, and so there would have to be an inference that they've committed some wrong in the past, which is precisely the problem with Congress finding that. If prevention were limited to that, yes, but prevention can be undertaken without a crime having been committed. I mean, just in the ordinary course of life, right? One can prevent something without there having been an instance previously. You keep saying this is, Congress is punishing Kaczmarski, but we don't, to answer that question, we have to look to see what Congress's objective is in passing the law, don't we? Like, in Nixon, you know, yes, it was focused on Nixon, but Congress had a legitimate reason for passing law, which happened to have an impact on Nixon, and isn't that this case? Congress is attempting to protect the integrity of the U.S. government's computer systems. So, that's its objective.  But that's a consequence of Congress exercising its legitimate authority to protect its computer systems, isn't it? You had two responses, Your Honor. You go to two different tests that this court looks to. One, the motivational. Don't give me tests. Just to answer my question, however you describe which test we apply, that's what this is. We have to balance Congress's professed purpose against the impact on Nixon. There's nothing in Section 1634A itself that says what Congress's purpose is. The senator who introduced Section 1634 described its purpose as, quote, to ban Kaczmarski software from all of the federal government. Would you agree, then, that if we thought there was a sufficient basis for us to accept the notion that Congress has attempted to protect computer systems, if we think there's enough evidence here to support that, then it's not a bill of attainder? In other words, does your case turn on the fact that, basically, you claim this one senator was key to it? Do you see my point? No, Your Honor, because, again, if you look at the scope of the statute that was passed, if the court assumes that the purpose for Section 1634A is the protection of national security, there is still a significant imbalance between that non-punitive purpose and the burden that's imposed on Kaczmarski Lab  Is there any case that says there's a narrow tailoring requirement in the bill of attainder analysis? Yes. What I was just quoting from was the Fortich decision at 351 F. 3rd, 1120, I'm sorry, 1221, where the court said where there is a significant imbalance between the magnitude of the burden imposed and the purported non-punitive purpose, that can be considered punishment. In Fortich, there was a different way to have accomplished it, right? There was a simple way to have protected the child without branding Fortich as a child abuse. And there is a much less burdensome way for Congress to achieve its national security interests. Well, suppose Congress had said, you can't buy, it prohibits the government from buying from Fortich any antiviral software. That's it. In other words, you could sell other products, but just not that one. Would that satisfy you? That would be a more difficult case for us, but I don't think it would satisfy us because of the reputational aspersions that Congress had cast on a cybersecurity company. But what's the reputational aspersion? You're saying we're trying to protect the integrity of the government's computers. Right. You're not saying Kaspersky did anything wrong, right? You're just saying there's potential concern here. Yes, by Congress saying that the cybersecurity company is a cyber threat to the United States. Well, that it's potentially under the thumb of the Russian government. There was no evidence even relied upon by the Department of Homeland Security that Kaspersky Lab is under the thumb of the Russian government. I said potentially because of its connections to Russia. Right, but those connections are rather speculative on the record that even the Department of Homeland Security has provided. I thought you conceded in your brief that the purpose of the legislation was to address national security vulnerability. There isn't any question about that. And if the purpose is national security, then again there is a significant imbalance between that non-punitive purpose and the burden that's imposed on Kaspersky Lab. Why, because of the perceived reputational? Yes, Your Honor. Are you suggesting that they will lose all other business opportunities because of this action? That's quite possible, Your Honor. As the Supreme Court recognized in Lovett, a case on which we relied, the bar in that case, quote, stigmatized their reputation and seriously impaired their chance to earn a living, unquote, which is the same effect on Kaspersky Lab here. Your Honor. Let me ask you just a question about, take you back to your test for a minute, and Fortich. So Fortich says that the primary test we look at is a functional test, right? Yes, Your Honor. So if we think this passes that test, can you still prevail? I mean, if we think, do we have to look at the others at all? Yes, Your Honor. I mean, because I think we passed both the historical test and the motivational test. I've already cited to the court. I didn't see, I thought when I read your reply brief you kind of abandoned any reliance on the motivational test. Is that wrong? I don't think that's correct, Your Honor, because we've cited, the difficulty here is that the motivational test is usually discerned by looking at the legislative history. There's nothing that one would traditionally think of as legislative history to look at here. There are no congressional reports, no hearing, committee hearing reports. We have only the statement of the sponsor of this legislation that was stuck in one year ago today in must-pass legislation that passed four days later. And the statement of that sponsor before it passed called Kaspersky Lab a quote-unquote threat, an alarming national security vulnerability, claimed that Congress had serious doubts about the company, and said that she would introduce legislation, quote, to ban Kaspersky software from all of the federal government and repeated it four days later or days later when the legislation passed the Senate. Am I mistaken in thinking there had been a hearing? I beg your pardon? Was there never a hearing? There was never a hearing. Not on this bill, but on Kaspersky. There were multiple hearings over many months on questions of cybersecurity and Russia in particular at which questions were asked about Kaspersky Lab, mainly questions asked of witnesses whether they would put it on their own computer. Some government witnesses said no they wouldn't. Some of the government's witnesses said they would. But there were no hearings, Your Honor, on Section 1634 or Section 1634A in particular. That's not really material. If the Congress has before it the materials that support the decision or the legislation. I think that's what I'm saying, Your Honor, is that the materials that Congress had before it don't support the scope, breadth, and permanence of the legislation that was passed. Well, I guess I thought you were saying that there's no legislative history on this bill except the sponsor's statement when she introduced it. But, in fact, I'm saying there seems to be quite a bit related to prior hearings. There's a legislative record in which for a few questions and a few answers, there's discussion of Kaspersky Lab. Implicit in your argument is your view of imbalance, which I think is interesting. It's obviously self-serving, but I don't know why it's correct. You think the magnitude of the burden is significantly greater than the non-punitive purpose. And I must say intuitively I think that's wrong, given the world in which we live and given the concerns, our national concerns about Russian intrusion into our national affairs. I mean, it's a self-serving argument, but I don't want you to think that because you state it and because you say there are reputational consequences, one can react to that by saying so what? That's the consequence that you pay if you put our nation in jeopardy. So where is the imbalance? The imbalance is with the permanence and the inescapability of the prohibition on all uses. So now if results, if the situation changes going forward, we don't have the faintest idea what the responses will be. If Section 1634A said that, Judge Edwards, that this would be a different case. Well, no, that's just a fact of life in legislation. Legislation can always be modified or rescinded. That fact did not preclude the Supreme Court from finding that equally broad and permanent bans were bills of attainder in the cases involving prohibitions on Confederates, serving as priests or as attorneys, or communists serving in trade unions. Yeah, but you're starting in those cases with the significant imbalance that almost everyone would agree was there. I don't think everyone would begin to agree with you that there is an obvious and significant imbalance here. And you run past that very quickly as if it's so, and I just want you to understand in looking at this case as a judge, why is that so? Given the real-world consideration, it doesn't seem so to me at all. I understand, Your Honor. I see my time is running. Let me just ask you sort of a big-picture question. When you just read, if you just read all the Supreme Court cases that have found something to be a bill of attainder, and Fortage, if you look at all of them together, there's four Supreme Court cases, two from the Civil War period, two from the Cold War, and those all found bill of attainders, but they were all situations. They all involved human beings, you know, a flesh-and-blood person, and they all involved situations where, you know, the legislature thought the person was untrustworthy or subversive. And then you have Fortage, which is another bill of attainder with an individual who, you know, the whole statute rested on the proposition that Fortage was a child abuser. I mean, those are so different from this situation, where what you have is the United States Congress, which obviously has authority over what the government buys, what services the government buys, making a judgment based on the evidence it had before it that it didn't want the U.S. government agencies to buy this product because of its threat to the integrity of computers. It's just a totally different situation, isn't it? It's hard to fit this case into that, you know. I mean, you can take these four tests. I'm sorry, three tests. You know, you can take the language of the tests. You can make them come out your way by how you describe it. But when you step back and look at the big picture, this just isn't anything like those cases. I would respectfully disagree, Your Honor, in that in the post-Civil War cases, you had situations in which legislatures, federal and state, considered certain persons disloyal and unworthy of serving in particular functions or they would pose a threat to national security. And the Supreme Court recognized the prohibitions even from some employment. But it was all based on their behavior and what they had done. And they were humans. They were individuals. Right. And it's equally based on behavior here. And as this Court has assumed in Bell South and its sister circuits have concluded in other cases, the Bill of Attainer clauses apply to corporations. No question about that. I agree with that. I was just making the point that I agree. I wasn't making the point that it doesn't apply to corporations. It does. I was just making the point that it's really hard to fit this case into what those cases look like. This looks much more like a U.S.C. Nixon case or something. Anyway. I see my time has run. I can address that if you wish, Your Honor. That's okay. Well, yeah, do you want to say something about that? Well, Nixon was quite distinct from this in that there was no need to single out anyone else. He was, as the Supreme Court recognized, a legitimate class of one because there was no other president who had entered into an agreement to destroy his presidential records, all the other presidential records. Congress obviously thought this was a company, a class of one, a Russian-based company with headquarters and servers in Russia with deep connections to Russian intelligence. And you haven't identified any other company like that. We have, Your Honor. In our reply brief, we've listed every— because this case was decided at the pleading stages, we have not had the opportunity to engage in discovery. But we've cited in our reply brief several in-depth reports performed by Reuters that show that all the other major cybersecurity companies that provided their source code to the FSB are using Russian telecommunications networks. Yeah, but those are American-based companies, correct? Americans or other based companies. American companies, but they weren't headquartered in Moscow and they didn't have the deep relationship that Kaspersky has with Russian intelligence. The headquarters based in Moscow is not cited by the government as a basis for its decision. And the deep connections, the so-called deep connections to Russian intelligence are speculation. At most, what the government has pointed to is that Eugene Kaspersky graduated from a school 30 years ago that was in part funded by the Russian military. He served in the Russian military, and he has friends who are still in the Russian intelligence and military community. Okay. Excuse me one second. Am I correct in thinking that you have agreed that the revenue effect of the ban is less than 1% of Kaspersky's revenue? No, Your Honor, for the reasons I gave to Judge Edwards, because if the revenue effect bleeds over into private customers, who once they see the federal government Oh, no, that's speculative. But the actual ban by the U.S. government accounts for how much? I think we don't dispute what the judge I think she said one-tenth of 1%. concluded in her brief. But the primary effect that we pled, since this case was decided at the pleading stage, which I haven't been able to address, but this case was decided at the pleading stage, we have pled the reputational injury, and it was inappropriate for the judge to have relied on those facts. Okay, thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Louis Yellen from the Department of Justice. I'm here today on behalf of the federal defendants. Your Honors, there's no real question that federal computers are vulnerable to Russian cyber attack, and Congress enacted legislation to address that vulnerability. The statute that Congress enacted addresses the vulnerability in general terms, and it addresses a specific vulnerability that Congress identified and thought needed immediate action. There was no punitive nature to the statute. It was a regulatory statute to protect federal computers. That is the basis for a proper holding. What's the basis for banning everything the company makes as opposed to just this risky software product? Your Honor, as the cases have said in Legion, there is no requirement that the Congress, in a bill of attainder analysis, legislate as narrowly as possible. Congress could reasonably believe, based on the evidence that was before it, that a complete ban was essential to protect the national security of the United States computers. The question is not whether, in fact, that determination is true. The question is whether Congress reasonably could have believed that it was true. It could, based on the evidence it received, the 115th Congress, and that's sufficient to uphold the statute against a bill of attainder challenge. Your Honors, the basic premise of our argument I've just provided, and we've given details in our brief, I want to be responsive to any questions the Court has, but I don't have affirmative points that I feel are needed. What's your response to Mr. Christensen's argument that Congress should have just passed a much broader statute that captured the characteristics of this company and any others that fell into it? Two questions, Your Honor. First of all, the jurisprudence absolutely clearly does not require that. If I may read three sentences from the Nixon case and then point to specific aspects of the statute. Well, as he just pointed out, Nixon's kind of unique. Nixon was the only person, the only president who had the tapes. And I think there's an analogy. There wasn't anybody else. There was no other category. I guess they could have passed a law which says, instead of mentioning Nixon, they could have said any president threatened with impeachment. The tapes of any president threatened, who resigned under threat of impeachment. That's precisely right. Who caught all other presidents with tapes. That's precisely right, Your Honor. As Judge Ginsburg's colloquy with opposing counsel suggested, Congress could have used that fiction and used general terms to identify a specific individual or entity that it had reason to take regulatory steps against. The jurisprudence simply does not require that. And Nixon absolutely clearly recognizes that when Congress legislates to address a very specific problem, that is simply not a bill of attainder in virtue of its specificity.  The Congress made both general and specific. Yes, Your Honor. What's the general? Both Section 1633 and Section 1634C. Section 1633 requires the executive to develop a policy concerning cybersecurity. Section 1634C requires a review and report regarding procedures for removing suspect programs on federal computers. Section 1643, excuse me, 34A is the provision that's at issue here, and it is directed specific to Kaspersky products on U.S. computers,  that Kaspersky products pose a unique threat to federal government computers. So Congress, just as in Nixon, legislated generally to protect the government against a general threat and specifically with respect to a specific threat that Congress perceived. So 1633 could be the basis for an executive branch determination that some additional companies should be off limits? Without question, yes, Your Honor. So just to follow up on a question that Judge Ginsburg asked a little while ago, since there were no hearings on this bill, when we write our opinion one way or another here, what sources of evidence can we look to to understand the purposes of Congress here? What are the documents we can look to at this stage of the litigation? Yes, Your Honor. I think the Court need look no further than the statute and the structure of the statute that I just described to Judge Ginsburg. The general and specific legislation shows Congress's purpose and I think is on its face obvious that Congress had a proper regulatory purpose in mind. That said, I also think it's entirely proper to consider the broader legislative record that was before the 115th Congress. The question is not one of statutory interpretation where courts look to legislative history when they do look to legislative history regarding a particular statute. The question is what Congress's purpose was in enacting a statute for a bill of attainder inquiry. The question is what Congress's purpose was. So while I think it might not be proper, though I certainly wouldn't want to conceive the fact, to look to legislation that was being considered or hearings considered by Congress long ago, the 115th Congress, the Congress that enacted this statute, had multiple hearings with testimony from multiple executive branch officials about Russian cyber attacks in general and about the risk that Kaspersky software, antivirus software on U.S. computers poses specifically. And this Court's decision in Fortich, in fact, I would say, I believe all of this Court's bill of attainder cases look more generally to the context of legislation. And I think it's a fair description to say the hearings and testimony and even correspondence between members of Congress and agencies seeking information is relevant to the inquiry about what the 115th Congress's purpose was in enacting this legislation. But didn't the district court look to non-public documents with respect to the APA disposition? With respect to the APA disposition? So just to make sure I'm following you, Judge Edwards, you're referring to the... There's some legislative materials that you can make the argument they're public legislative materials, but I think there were some materials the district court relied on that were not public. In making the bill of attainder analysis, Your Honor, or making the decision concerning the directive. In concerning the bill of attainder analysis in this statute, I think that's not correct, Your Honor. The directive. The directive? I also don't believe that's right, Your Honor. The court in the directive, the principle holding was that the matter was not justiciable because 1634 is a broader statute than the directive itself. And the court held that it could not provide any remedy, even if it ruled in favor of Kaspersky, on the directive itself. Can we rely on the materials that the Homeland Security Secretary relied on? Manfra and all those? To a certain extent, Your Honor. The Congress had testimony from Homeland Security officials about Homeland Security's directive. The Manfra, Assistant Secretary Manfra, testified before Congress about the rationale that DHS had used to issue its directive. But the district court, I think, cited Manfra's declaration, not Manfra's testimony. So two points about that, Your Honor. To the extent that I believe that the Manfra declaration is the only instance that Kaspersky has identified of something not absolutely clearly in the legislative record here, and to the extent that was there, it was harmless error for the reasons we point out in our brief. What about Gentile? I beg your pardon, Your Honor? Gentile declaration? I don't remember that being relied on, Your Honor. If this is critical for the court's analysis, I'd be happy to follow up. I'm sorry, I just don't recall the reliance there. We do explain that the Manfra declaration point to which the district court relied was entirely duplicative of other evidence Congress had before it in the first place. And in the second place, it wasn't the district court did not rely on it to support its affirmative case, that is, its holding, but to respond to an argument, a counterargument that Kaspersky had itself raised. Rather than sort through that, wouldn't it be more appropriate, or at least more direct for this court to look to the record without regard to that? I think that's entirely right, Your Honor. I think it's perfectly fine. The review here is de novo. That's exactly right, Your Honor. And I think, I beg your pardon? Well, insofar as counsel for the company has maintained that the court erred in relying on some non-public sources, the question before us I think is not whether that was correct or not, but whether we can come to a conclusion without regard to that. Yes, Your Honor. That's entirely accurate. Our brief at 36 and also 9 through 13 identifies the purely legislative material that the 115th Congress considered. That legislative material is more than sufficient to support a conclusion that Congress reasonably determined that Kaspersky poses a unique threat and required very specific legislation to respond to that unique threat. Thank you. Thank you, Your Honors. Okay, thank you. Did Mr. Christensen have any time left? Okay. You can take a minute if you'd like. Thank you, Your Honor. In answer to Judge Edwards' question that we were just talking about and Judge Ginsburg's question, the district court did improperly rely on the summary judgment record in what the district court called a separate and distinct Administrative Procedure Act case and used those facts to judge the plausibility of the allegations in the bill of attainder case, which was on the- Right, but now the case is here de novo, so the errors of the district court are only informative. So the question before this court is whether Kaspersky Lab plausibly alleged a bill of attainder claim in its complaint, and for reasons cited in our briefs, we did. If this court is persuaded that Kaspersky Lab should prevail on its procedural arguments, we would also ask the court to consider the request for a stay since Section 1634A goes into effect in two weeks. Suppose for a moment that the court does not agree with your position on the NDAA. Is there any reason for us to deal with the BOD? We've alleged and briefed, Your Honor, that the district court did not consider a procedural claim for relief in the BOD complaint. Why wouldn't it be moot, or at least without any incremental injury to you if you've lost on the first point? If there's no relief that the court could offer, it may be credentialed. That would be the problem. But if the NDAA stands, the NDAA is broader. Section 1634A is broader than the binding operational directive, and if the Section 1634A were to stand, then it would eclipse the binding operational directive. All right, just want to make that clear. Thank you. Okay, thank you. Case is submitted.
judges: Tatel, Edwards, Ginsburg